Mr. Whyte.

As to the definition of a chose in action, as given by the counsel on tiie other side, (lie case in Com. Ilig. states a lease of sheep for two years, and a sale of the lessor during these two years, and held ill. in that cáse, the vendee of the sheep after the two years might have taken them, yet were they held to be choses in action. Co. Lit. 214, a. states a right of entry into lands, and says it cannot he assigned; and in that case, the person having a right to enter need not bring his action, he may take possession when ho pleases, without the immediate assistance of the law. As to the rule itself, the object of it is to repress litigiousness, and that is as necessary here as in England, or any where else. As to the authorities relative to the villein in gross, he was not apprized of their being intended to be produced, and was therefore-not prepared to answer them; hut it seemed to him, that the cases of villeins in gross in England anciently, and of the slaves of this country, were widely different, A villein in gross was an inheritance, and jiassed by deed, and the action to recover him was a writ of right, or a writ de nativo habendo. And the rea--son why a man could not elect to suppose himself dis-seised of a villein in gross, perhaps might be owing to this, that he was not allowed to bring an assize or writ of entry for a villein in gross; but must betake himself to the writ de nativo habendo, and more especially as in the case of a ward, where the wardship wás considered as a chattel interest. Co. Lilt, says he may he dispossessed, and doubtless this distinction arose from the circumstance of being able to bring a personal action in this case, when in the case of the villein in gross, it was otherwise ; and the lawyers were obliged to use terms expressive of the real quality of the thing to he recovered. Whether these conjectures however are near the truth or not, it would be a strange doctrine to adopt at this day, that a man could not be dispossessed of his slave, after so many actions of trover and detinue have been brought for the recovery of slaves, and after it has been considered for so great a length of time, that an adverse possession of slaves for the length of time mentioned in the act: of Assembly concerning limitations of *186 actions, will bar the owner’s action. How can this bo any longer effected, if the legal possession continues always in the owner, notwithstanding a dispossession in fact? Such a doctine as this, would overturn the act of limitations with respect to slave property entirely, and would render it more insecure than any other species of property whatever. He therefore could not believe it to be founded on principle, and concluded with praying that judgment might be arrested. — Curia advisare.
And at October term, 1795, this cause was again argued, as I haV(v understood from the counsel, and there was a judgment for the plaintiff, per Judges Ashe and Macay.
Note. — It is certainly true, that according to the notions of the ancient law relative to villeinage, a man could not be dispossessed of Ills villein ; he cannot be disseised or dispossessed of an incorporeal hereditament. Salk. 666. Co. Litt. 32. And such was a villein in gross. Co. Litt, 121 Gilb. on Ten. 74, 75. Co. Litt. 306, b. But the nativo hdbendo bore no resemblance to the writ of detinue, though it had the clause neo guie detlnent; it was directed to the Slierifl' against no person in certain, and was removable by pone or libertate probanda. F. N. B. 186, 187. It was comestible by the villain himself, by plea denying his villeinage. F. N. B. 190, 186. And the aim of the nativo habendo is agiinst no one but the villein himself, not against any third person, tin whose service or actual possession he maybe. F. N. B. 191. Sullivan 317, 319. For this latter purpose, other writs, considering the villein as an incorporeal hereditament, were used.
Note. — Vide Morgan v. Bradley, 3 Hawks 559. Stedman v Riddley v. Hawks 29, which latter case seems contra.